## THE CITY BANK AT PROVIDENCE *vs.* ALEXANDER FULLERTON.

The provision in *St.* 1842, *c.* 56, § 1, that a person arrested on mesne process or execution, for any debt, might give notice to the officer having him in custody, or, if he should be then bailed, to the officer who made the arrest, of his desire to take the oath prescribed for poor debtors confined on execution, applied to persons committed on execution, and authorized a debtor, who was thus committed and had given bond for the liberty of the jail limits, to give such notice to the jailer.

While *St.* 1842, *c.* 56, was in force, a debtor, who was committed on an execution that issued on a judgment recovered by a corporation established by the laws of another State, and which had no place of business or officer in this State, caused his desire to take the poor debtors' oath to be made known to a justice of the peace, who appointed the jailer's office and the 9th of May, at 3 o'clock, P. M., as the place and time for the examination of the debtor, and issued a citation, an attested copy of which was delivered by the proper officer to the person who was attorney for said corporation, in the suit in which said judgment was recovered, on the 8th of May, at 11 o'clock, A. M. at his office, which was half a mile from the office of the jailer: The corporation did not appear at the time and place appointed; but two magistrates then and there administered the oath to the debtor, and made the proper certificate thereof, and he never surrendered himself to the jailer, to be held in close confinement. *Held,* in an action on the bond for the liberty of the jail limits, that the notice to the corporation was according to law, that the debtor was lawfully discharged, and that the action could not be maintained.

DEBT on a bond for the liberty of the jail limits. The case was submitted to the court upon the following agreed statement:

"Jonathan Robinson was committed to the jail in Boston, on the 8th of May 1843, on an execution which issued upon a judgment recovered against him by the plaintiffs. Afterwards, on the same day, said Robinson, as principal, and the defendant, as his surety, executed the bond declared on, which was in the form prescribed by the Rev. Sts. *c.* 97, § 63; and said Robinson was thereupon admitted to and had the liberty of the jail limits, and on the same day represented to the keeper

of the jail that he was desirous to take the benefit of the law for the relief of poor debtors. The keeper of the jail forth-with made the same known to a justice of the peace, who thereupon, on said 8th of May, appointed the 9th of said May, at 3 o'clock, P. M., and the office of the keeper of the jail, as the time and place for the examination of said Robinson; and the said justice, on said 8th of May, issued a citation, to that effect, to the plaintiffs, which was served no otherwise than by delivery, by a proper officer, of an attested copy thereof to the person who was the attorney of the plaintiffs in their suit against said Robinson, at his office in State Street, Boston, at 11 o'clock, A. M. on said 8th of May; said attorney's office, and also his residence, being more than half a mile from the office of the keeper of said jail; and the plaintiffs being a corporation established by the laws of Rhode Island, and having no place of business, nor any officer resident in this Commonwealth.

"On said 9th of May, two justices of the peace and of the quorum, and the said Robinson, appeared at the time and place appointed in the aforesaid citation, and after waiting there for one hour, to give time for the plaintiffs to appear, and the plaintiffs not appearing, an examination of said Robinson was had by said justices, and they thereupon administered to him the oath, and made the certificate prescribed by the Rev. Sts. c. 98, §§ 9, 10. The said Robinson did not, within ninety days from the day of his commitment on the execution, surrender himself to the keeper of said jail, to be held in close confinement; nor did he pay or satisfy the amount of said execution."

On these facts, it was agreed that, if said Robinson was lawfully discharged by the aforesaid proceedings, the plaintiffs should become nonsuit; otherwise, that the defendant should be defaulted, and damages be assessed in such manner as the court might direct.

*G. M. Brown,* for the plaintiffs. The proceedings in this case were while *St.* 1842, c. 56, was in force, which provided that a person, arrested on mesne process or execution, might

"give verbal or written notice to the officer having him in custody, that he is desirous to take the poor debtors' oath, and the said officer shall forthwith make known the same to a justice of the peace, who shall appoint a place and a time for the examination, and give notice thereof to the plaintiff or his agent or attorney, in the manner and on the terms provided in the Rev. Sts. c. 94, §§ 16 – 19, for notifying parties in taking depositions." This *St.* of 1842 does not apply to persons *committed* on execution, and therefore the case at bar falls within the Rev. Sts. c. 98, which require thirty days' notice to be given to a creditor of his debtor's intention to take the poor debtors' oath.

If the *St.* of 1842 did apply to this case, yet the debtor did not conform to that statute. The notice by the debtor should have been given to the officer who arrested him, and not to the jailer ; for he was not in the custody of the jailer. *Codman* v. *Lowell*, 3 Greenl. 52. *Cargill* v. *Taylor*, 10 Mass. 208 The notice to the plaintiffs was not served on them, nor on any agent or attorney of theirs, but on him who was then attorney in the original suit. His power and duty, as their attorney, ceased upon the issuing of the execution, if not upon the rendition of the judgment. *Tipping* v. *Johnson*, 2 Bos. & Pul. 357. *Kellogg* v. *Gilbert*, 10 Johns. 220. 2 Greenl. on Ev. § 141. The time of notice was too short, being only twenty eight hours. The rule, under the *St.* of 1842, is that of Rev. Sts. c. 94, § 18, viz. "allowing not less than twenty four hours after such notice, before the time appointed for taking the deposition, *and also* allowing time for travel to the place appointed, after being notified, not less than at the rate of one day, Lord's days excluded, for every twenty miles' travel." So that, even if the attorney were the proper person to receive notice, he had not legal notice. The day on which notice is given should be excluded. *Bigelow* v. *Willson*, 1 Pick. 494, 495.

No proceedings under *St.* 1842, c. 56, however correctly adopted, could discharge a debtor committed on execution That statute gives no authority to administer the poor debtors

oath, and *does not state the effect of the oath.* Besides; it is repealed by *St.* 1844, *c.* 154, which has provided for service of notice on the creditors' attorney in the original suit, and thereby shown that the *St.* of 1842 did not apply to the present case.

*Whiting,* for the defendant. The service was rightly made on the attorney in the original suit. In legal presumption, an attorney in a suit remains such until the execution is satisfied. His authority is not ended by the commitment of the execution debtor. The time of notice was sufficient. Twenty four hours and a *pro rata* time for travel, viz. at the rate of one day for twenty miles, are allowed by Rev. Sts *c.* 94, § 18. *Vinal* v. *Burrill,* 16 Pick. 401.

The *St.* of 1842, if it stood alone, might not authorize the discharge of a poor debtor. But it is to be considered as part of the revised statutes *in pari materia.* Besides; it speaks, in § 4, of the debtor's being discharged on examination.

The other points raised by the plaintiffs were decided against them, in *Jenkins* v. *Newell,* 9 Met. 303.

HUBBARD, J. It has been argued in this case, that the *St.* of 1842, *c.* 56, did not apply to commitments on execution, and therefore left in full force the provisions of the Rev. Sts. *c.* 98, on that subject; and consequently that a debtor imprisoned on execution, and intending to take the benefit of the poor debtors' oath, was compelled to follow the directions of the revised statutes. It is also argued, that if the case was within the *St.* of 1842, the notice of the debtor's intention was not served by the proper officer, and that the proceedings, therefore, do not affect the plaintiffs.

These questions were considered by this court in the late case of *Jenkins* v. *Newell,* 9 Met. 303 ; and it was there settled, that the *St.* of 1842, *c.* 56, was additional and remedial, and was intended to include within it, as well the cases of persons arrested on execution as on mesne process. And it was also held, that in case of an arrest and commitment on execution, the jailer was the proper officer to whom the debtor was to give notice of his intention to take the oath

Ciy Bank at Providence *v.* Fullerton.

as being the officer holding him in custody, within the mean-
ing of the statutes, notwithstanding a bond had been given for
the liberty of the prison nits; and that the statute was in-
tended also to short in the time of notice, in both cases, from
thirty days, to the time prescribed to be given for taking
depositions.

A third point has also been raised, viz. that the notice was
not served on the creditors, nor on any attorney or agent of
theirs; that the statute required it should be served on the
person who *is* the agent or attorney, and not one who *was*
the attorney; for *non constat* that the former attorney re-
mains such. And sundry authorities have been cited to show
the extent of an attorney's powers after judgment rendered,
which are summed up in 2 Greenl. on Ev. § 141. But in
the construction we give to the statutes, we think it unneces-
sary to consider how far, at common law, the objection, as
presented, would avail the plaintiffs. The Rev. Sts. *c.* 98,
§ 3, provide that the citation, issued in behalf of a person, com-
mitted on execution, shall be served on the creditor, by read-
ing it to him, or by leaving a copy at his last and usual place
of abode, if he is alive and within the State; otherwise, that
it shall be served in like manner on the person who was his
attorney in the suit; and if there is no such attorney within
the State, that the copy shall be left with the clerk of the
court, &c. The *St.* of 1842, *c.* 56, § 1, in respect to persons
arrested on execution, provided that the justice should " give
notice thereof to the plaintiff, or his agent or attorney, in man-
ner and on the terms provided in the 16th, 17th, 18th and 19th
sections of the 94th chapter of the revised statutes, for notify-
ing parties in taking depositions." The provisions of *c.* 98, § 3,
were not, we think, intended to be repealed by § 1 of *St.* 1842,
*c.* 56; and as the two statutes relate to the same subject matter,
they are to be construed together. But if those provisions are
affected by that statute, it is by reference to *c.* 94, § 15, mak-
ing a service on the attorney of the same effect with a service
on the creditor. Whether this is so or not, it is unimportant
now to determine; as the judgment creditors, in the present

7 *

case, were a corporation in another State, and the service therefore, on the attorney of record was within the letter of either statute, as well as within their spirit.　We are satisfied, therefore, that the service is free from any legal objection.

It is further urged against the regularity of the proceedings in this case, that the time given, between the service of the notice and the hearing, was insufficient; that, in the calculation, the day on which the notice was given should have been excluded, or, if not, still that twenty four hours' notice is required, and not less than one day for travel, and therefore the notice should have been at least to May 10th at 11 o'clock, to comply with the law.　This objection is predicated upon the Rev. Sts. *c.* 94, § 18, which are as follows: " The notice shall be served, by delivering an attested copy thereof to the person to be notified, or by leaving such copy at his place of abode, allowing, in all cases, not less than twenty four hours after such notice, before the time appointed for taking the deposition, and also allowing time for his travel to the place appointed, after being notified, not less than at the rate of one day, Lord's days excluded, for every twenty miles travel." The object of the statute is very clear.　The person notified shall have not less than twenty four hours' notice before the time required for his attendance ; and if he has to travel to the place of attendance, he shall have sufficient time for that purpose, not less than at the rate of one day for every twenty miles' travel.　The time and distance are measured by hours, and therefore fractions of a day may be computed, both as to notice and the time necessary to reach the place of appointment.　In the case at bar, the notice was served on the 8th of May, at 11 o'clock, and the time appointed for the hearing was 3 o'clock, P. M. on the next day.　The law requires no exclusion of a day, in prescribing the notice, but requires merely a specific number of hours.　Here more time than twenty four hours was given ; the distance was half a mile, which, at the rate of twenty miles' travel to the day, would not require more than half an hour's additional notice ; and consequently the time allowed for travel, as well as for notice,

was within the provision of the statute, giving it a strict construction.

But whether such a rigid construction as to time, where the party lives but a short distance, and the magistrates allow an hour before proceeding to hear the case, is to be given to the statute, it is not now necessary to determine.

*Plaintiffs nonsuit.*